TELL ROBERTS v. THE STATE.

No. 434.   Decided February 23, 1910.

Rehearing denied April 13, 1910.

**1.—Local Option—Evidence—Intoxicating Liquor.**

Upon trial for a violation of the local option law, where the evidence showed that the liquor in question was out of the same car and of the same quality which a third party sold, there was no error in showing that the liquor sold by said third party was intoxicating.

**2.—Same—Charge of Court—Agency.**

Where, upon trial of a violation of the local option law, the defendant claimed that he bought the liquor for the prosecutor and did not sell it to him, and the court submitted this issue, there was no error.

**3.—Same—Charge of Court—Sale, Definition of.**

On trial of a violation of the local option law, where the sale of the liquor was admitted, there was no error in the court's refusal to submit defendant's requested instructions defining a sale.

**4.—Same—Sufficiency of the Evidence.**

    Where, upon trial of a violation of the local option law, the court fairly submitted all the issues in evidence, which latter sustained the conviction, the verdict of guilty will not be disturbed.

    Appeal from the County Court of Erath. Tried below before the Hon. J. B. Keith.

    Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

    The opinion states the case.

    *Young & Johnson* and *J. J. Eckford* and *M. M. Brooks,* for appellant.—On question of the court's refusal to instruct on agency and his failure to explain the legal terms thereof: Thompson v. State, 34 S. W. Rep., 937; Bennett v. State, 34 S. W. Rep., 936; Bowman v. State, 35 S. W. Rep., 382; Phillips v. State, 40 S. W. Rep., 270, and Buzard v. Bank of Greenville, 67 Texas, 83.

    *John A. Mobley,* Assistant Attorney-General, for the State.

    RAMSEY, Judge.—By information filed in the County Court of Erath County on the 26th day of July, 1909, appellant was charged with the unlawful sale of intoxicating liquors in said county to one E. R. Snead, and also with pursuing the business of selling intoxicating liquors in said county without having paid the taxes imposed by law for so doing. On a trial had in said county on September 15 thereafter, he was convicted on the first count and his punishment was assessed at a fine of $25 and twenty days confinement in the county jail.

    The evidence shows that appellant was, in April, 1908, traveling for a brewery located and doing business in Houston, Harris County, Texas. He describes himself as general foreman around the brewery and his occupation that of traveling for the brewery selling hiawatha. The evidence of the State tended to show that about the first day of April, 1908, in the city of Dublin, in Erath County, appellant sold to E. R. Snead a barrel or cask of hiawatha and delivered it to him, and received ten dollars therefor. Describing the transaction the witness Snead makes this statement: "When I bought it from him I paid him for it and he then went off and got it. You heard what I said about swearing he delivered it to be his. He said down there he could guarantee it not to be intoxicating and that any child could drink it. Yes, I said I told him I would take a barrel of it. I paid him in my joint down there for it and he went off and got it and delivered it to me. No, I don't know where he got it. I know I paid the money for it and that is all I know about it." Appellant admitted, to some extent, the incriminatory facts. He states that before this he had been selling to one Hammers, but that he preferred to sell to Snead because, as he says, he was in better circumstances than Hammers; that on the day in question he saw Hammers. Thereupon, he proceeds to state the

circumstances, as follows: "He told me he saw Bob the other day and Bob wanted to buy some hiawatha, and so I thought I would just go down there and sell him, and after I said to him that it come in casks he reached down in his pocket and handed me ten dollars and told me to go and get him one. He gave me the money and I took it to Hammers and gave him the ten dollars, and by that time the wagon was coming up to the back and we loaded it in and it was settled. It was not acting for Hammers in that deal. In this way I was handling it for Snead from Hammers—I got no profit out of it." On cross-examination he made the following statement touching this matter: "I testified about this transaction in the District Court in July, and at that time I may have said that I sold this hiawatha to Mr. Snead, for Mr. Hammers." Hammers, to whom he refers, was introduced for the State and testified, among other things, to this effect: "I remember Mr. Tell Roberts being in my place some time about the first of April, 1908, and took a cask of this hiawatha from my place. He took a cask of it and put the money in the money box. He told me he had sold it to Mr. Bob Snead; he made this remark when he rolled the cask out of the house, and in the rear of the building." On cross-examination touching this same matter he makes this statement: "Yes, all right now, about this transaction, it was about like this: I had some hiawatha down there, and defendant come along there and got some hiawatha—got some and told me it was for Bob Snead, and he put the money in my box and he took it off. Roberts was not my agent. I had not told defendant to sell Bob any of this stuff. I never had anything to do with his going up there and making this sale and if he made a sale to Bob it was without my permission or knowledge at the time." Mr. Hammers also testified that along about the first of April he handled one carload of this beverage, and that about this time he had sold several casks of same to Bradley, and that the casks that were sold to Snead were out of the same car that he sold Bradley, and he supposed was the same kind of stuff that he sold to Bradley, as he did not see any difference in it. A number of witnesses were introduced who testified that they had about the time of the alleged sale bought hiawatha from Bradley and that same was intoxicating. There was no evidence in the record that Bradley had ever bought hiawatha from anybody else. This testimony was objected to because the evidence did not exclude the idea positively that Bradley might have bought hiawatha from some other person than appellant. We think the evidence was sufficient to permit the introduction of testimony of the intoxicating quality and character of the liquor sold by Bradley, since the evidence clearly raised the issue that about this time Bradley was buying from Hammers and that the liquor sold to Snead was out of the same car and was of the same quality as that which Bradley was selling. If there was any evidence that Bradley was selling hiawatha made or brewed by any other concern, there might

be some question as to the probative force of the testimony, but there is no such issue raised or made in the evidence. In this state of the case the court gave a very clear charge to the jury in which he submitted all the defenses raised by the evidence. Among other things, he instructed them as follows: "Or if you believe from the evidence, or have a reasonable doubt therefrom, that defendant at the time he sold liquors to E. R. Snead, if he did do so, in good faith believed they were not intoxicating, then you will acquit the defendant under the first count in the information." The court also instructed the jury as follows: "Or if you believe from the evidence, or have a reasonable doubt therefrom, that the defendant acted for Snead in the purchase of the liquors in question, and not in the interest of him himself or the owner of said liquors, then you will acquit him under both counts in the information." The court also gave at the instance of appellant, the following special charge: "Before you can convict the defendant herein you must believe beyond a reasonable doubt that the liquid sold by the defendant, if he sold any liquid to the prosecuting witness Snead, was intoxicating, and in the event that you have a reasonable doubt as to its being intoxicating, you will acquit the defendant and so say by your verdict."

On the trial, among other things, appellant requested an instruction defining what was meant by the word and term "sale." We think there was no occasion for the court to undertake to define this term to the jury. In the testimony both for the State and appellant a sale was admitted. All the witnesses, over and over, speak of the sale and of selling and delivery of the goods, and the payment of the purchase price and there can be no doubt that there was a sale to Snead of the cask or barrel of hiawatha and the jury could neither have been aided by the giving of such charge nor could their action have been affected by the failure of the court to give it. All the evidence showed a sale. As far as that matter was concerned the only question raised in the evidence was, whether appellant made the sale to Snead acting for himself or other owner of the property sold, or whether, as the agent of and acting for Snead, he bought for him the property delivered. The last proposition appellant asserts in his testimony. This is squarely denied both by Snead and by Hammers. The questions heretofore discussed are raised in many ways, but are the only matters of importance involved in the case. We think the submission of them was in every respect fair to appellant and that there is no ground urged why the conviction should be reversed and it follows that same ought to be, as it is, hereby affirmed.

*Affirmed.*

[Rehearing denied April 13, 1910.—Reporter.]